# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UTE MOUNTAIN UTE TRIBE,

      Plaintiff,

v.                                                Civ. No. 07-772 JAP/WDS

JAN GOODWIN, Secretary of the
Taxation and Revenue Department
for the State of New Mexico,

      Defendant.

## MEMORANDUM OPINION AND ORDER

The state of New Mexico levies five taxes on oil and gas operations throughout New Mexico, including operations on the Ute Mountain Ute Reservation. On August 10, 2007, the Ute Mountain Ute Tribe ("Tribe") filed a complaint (Doc. No. 1) against the Secretary of the New Mexico Taxation and Revenue Department, Jan Goodwin. Plaintiff's complaint contains three counts. First, Plaintiff alleges that the imposition of taxes violates federal common law, the Tribe's federal right to self determination, and the Supremacy Clause of the U.S. Constitution. (Compl. ¶ 22.) Plaintiff's second claim is that Defendant's imposition of an ad valorem property tax on oil and gas production equipment violates the Fourteenth Amendment and the Enabling Act of June 20, 1910, in which New Mexico disclaimed any taxing jurisdiction over lands held by the United States for the benefit of tribes. (*Id.* ¶¶ 25–29.) The third claim for relief, asserted under 42 U.S.C. § 1983, is that the taxes deprive individual tribal members of their "property rights and the privileges and immunities secured to them under federal law and the Constitution." (*Id.* ¶ 35.) Specifically, Plaintiff alleges that the Act of February 20, 1895, which established the Ute Mountain Ute Reservation, created property rights in individual tribal members that are enforceable through section 1983. Plaintiff seeks an injunction of tax collection and its costs and attorney's fees under 42 U.S.C. § 1988. (*Id.* ¶ d.)

On September 19, 2007, Defendant filed a Motion to Dismiss. (Doc. No. 7.) In that motion, Defendant urges the Court to decline to entertain Plaintiff's first and second claims as a

matter of federal-state comity. Defendant also argues that the Eleventh Amendment bars Plaintiff's suit. Regarding Plaintiff's first claim for relief based on tribal sovereignty and preemption, Defendant argues that Plaintiff has failed to state a claim in part because the economic impact on the Tribe is too speculative. Defendant does not move for dismissal of Plaintiff's second claim, regarding the ad valorem property tax on oil and gas production equipment, other than on jurisdictional grounds. Finally, as to Plaintiff's third claim for relief, Defendant argues that the Tribe cannot bring an action under section 1983 on behalf of its members, and in the alternative, that the Tax Injunction Act, 28 U.S.C. § 1341, bars this claim.

On October 2, Plaintiff filed Ute Mountain Ute Tribal Response to Motion to Dismiss of Jan Goodwin. (Doc. No. 10.) On October 16, Defendant filed Defendant's Reply Brief in Support of Motion to Dismiss (Doc. No. 12.) At a hearing on January 17, 2008, the Court heard arguments on Defendant's motion. Having considered the parties' briefs and arguments at the hearing, the Court concludes that Defendant's motion to dismiss should be granted as to Plaintiff's third claim for relief, but otherwise should be denied.

This memorandum opinion first addresses Defendant's Eleventh Amendment and federal-state comity arguments, and concludes that neither doctrine counsels the Court to decline jurisdiction over Plaintiff's suit.

**I. Eleventh Amendment**

The Eleventh Amendment to the U.S. Constitution provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. 11. Plaintiff seeks only prospective, equitable relief against a state officer, Jan Goodwin, and not against the state itself. Thus, Plaintiff seeks to avail itself of the *Ex parte Young* doctrine. 209 U.S. 123 (1908).

In *Verizon Maryland, Inc. v. Public Services Commission*, 535 U.S. 635 (2002), the Supreme Court held that citizens can bring federal claims against state officials so long as the "'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* at 645 (*quoting Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)). In *Verizon Maryland*, the Supreme Court retreated from

2

earlier decisions that considered whether the relief sought implicated special sovereignty interests. *See Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). Instead, the court simply inquires into whether the relief sought is the "functional equivalent of impermissible retrospective relief." *Id.* For example, in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. at 263, the plaintiff Tribe sought a declaratory judgment to establish its entitlement to the exclusive use and enjoyment of certain submerged lands in Idaho. In a concurring opinion—which the Supreme Court later embraced in *Verizon Maryland*—Justice O'Connor reasoned that while the Tribe's requested relief was equitable and prospective in form, it was equivalent in substance to a transfer of title to the land, which is more like a retroactive monetary judgment against the state of Idaho. *Id.* at 289 (O'Connor, J., concurring).

The Tenth Circuit has explained *Coeur d'Alene Tribe* as a narrow exception to the general rule that "a party may sue individual state officers in federal court in their official capacity for prospective injunctive relief." *Osage Nation v. Okla. ex rel. Okla. Tax Comm'n*, Civ. No. 03-5162, 2007 U.S. App. LEXIS 29811, at *9 (10th Cir. Dec. 26, 2007) (*citing Hill*, 478 F.3d at 1255–56). The relief Plaintiff seeks is quite unlike the "literal land grab effort" attempted by the Coeur d'Alene Tribe. *Hill*, 478 F.3d at 1260.

Just as the court does not consider the implications of the requested relief on state sovereignty, the impact on the state treasury does not determine whether the relief is impermissible. The loss of future tax revenues is simply not a monetary loss resulting from a past breach of a legal duty. In *Edelman v. Jordan*, 415 U.S. 651, 668 (1974), and *Milliken v. Bradley*, 433 U.S. 267 (1977), the Supreme Court allowed prospective equitable relief that would have a significant impact on the states' treasuries, noting that "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." 415 U.S. at 668; *see also Quern v. Jordan*, 440 U.S. 332, 347 (1979). Even though prohibiting the state from collecting taxes has a direct effect on the state treasury, this "inexorability" does not "transmute [the relief] into an impermissible award of damages." *See Reames v. Okla. ex rel. Okla. Health Care Auth.*, 411 F.3d 1164, 1167 (10th Cir. 2005) (*quoting Quern*, 440 U.S. at 347).

In the recent Tenth Circuit case of *Osage Nation v. Oklahoma ex rel. Oklahoma Tax Commission*, the court held that a Tribe's challenge to Oklahoma's income tax as applied to

certain tribal members fell within the *Ex parte Young* exception to the Eleventh Amendment. 2007 U.S. App. LEXIS 29811, at *24. The relief requested certainly would have reduced the state's tax revenues, and had "far-reaching implications on Oklahoma's sovereignty." *Id.* Nevertheless, the Tenth Circuit emphasized that its analysis was constrained to "whether the relief sought by the Nation is prospective in caption and substance." *Id.* Likewise, Plaintiff does not request relief that is functionally equivalent to retroactive liability, and therefore the Eleventh Amendment does not bar this suit. The fact that federal courts should be reluctant to interfere with state taxation does not require that the Eleventh Amendment bar such relief. However, there are other jurisdictional barriers to federal court injunction of state taxation, such as the Tax Injunction Act and principles of federal-state comity.

## II. The Tax Injunction Act and Federal-State Comity

The Tax Injunction Act, 28 U.S.C. § 1341, prohibits the district court from granting equitable or declaratory relief regarding "the assessment, levy, or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state." In *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463 (1976), the Court held that where a Tribe brings a claim that the United States could have brought on its behalf, the Tribe is not subject to the Tax Injunction Act. The Supreme Court reasoned that because 28 U.S.C. § 1362, which provides for federal jurisdiction over claims "brought by any Indian tribe or band," was enacted after the Tax Injunction Act, Congress did not intend the Tax Injunction Act to "oust federal jurisdiction over the tribe's suit." 425 U.S. at 474–75.

Before enactment of the Tax Injunction Act in 1937, the Supreme Court held that comity prevents federal courts from enjoining the collection of state taxes based on federal law, so long as state courts provide an adequate remedy. *Matthews v. Rodgers*, 284 U.S. 521 (1932)*; see also Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943) (holding that comity also restrained federal courts from granting declaratory relief). In 1981, the Supreme Court held that the Tax Injunction Act had not supplanted the common law doctrine of comity, and that comity may require federal abstention even where the Tax Injunction Act does not apply. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 107–116 (1981). Defendant therefore

argues that while Plaintiff's claim is not barred by the Tax Injunction Act itself, the Court should decline jurisdiction based on considerations of comity.

The Sixth Circuit indirectly rejected such an argument in *Chippewa Trading Co. v. Cox*, 365 F.3d 538 (6th Cir. 2004). In that case, a tribal corporation challenged the state's seizure of its tobacco products that were being transported without proper tax stamps. *Id.* at 539–40. The court held that comity bars a tax challenge by a tribal corporation, but in dicta noted that the doctrine of comity does not extend the reach of the Tax Injunction Act when a Tribe itself is concerned. *Id.* at 545. The Sixth Circuit considered it determinative that the challenge was brought by a tribal corporation and not the Tribe itself, because the *Moe* exception to the Tax Injunction Act is based on 28 U.S.C. § 1362, which provides for federal jurisdiction over claims "brought by any Indian tribe or band." *Id.*

The Court agrees with the Sixth Circuit's conclusion. The Supreme Court noted in *Fair Assessment* that the Tax Injunction Act simply affirmed the federal courts' ongoing practice of declining jurisdiction over challenges to state taxes where an adequate remedy was available. 454 U.S. at 107–116. In *Moe*, the Supreme Court held that Congress enacted section 1362 to preserve access to federal courts for tribes in the face of both statutory and comity-based reasons for declining these cases. 425 U.S. at 474–75. As the Sixth Circuit concluded, "it is reasonable to assume that § 1362 exempts suits from the *Fair Assessment* comity doctrine *to the same extent* that it exempts them from the Tax Injunction Act." 365 F.3d at 545. Because the parties agree that the Tax Injunction Act does not bar Plaintiff's claim, then under the reasoning of *Chippewa Trading*, Defendant's comity argument also fails. The Court also observes that in recent years the Tenth Circuit has regularly permitted these types of tax challenges by Tribes to go forward. *E.g.*, *Osage Nation v. Okla. ex rel. Okla. State Tax Comm'n*, Civ. No. 03-5162, 2007 U.S. App. LEXIS 29811 (10th Cir. Dec. 26, 2007); *Prairie Band Potawatomi Nation v. Richards*, 379 F.3d 979 (10th Cir. 2004), *rev'd on other grounds*, *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95 (2005); *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 572 (10th Cir. 2000).

### III. Section 1983

Defendant moves to dismiss Plaintiff's third claim for relief, which is based on 42 U.S.C. § 1983, on the ground that Plaintiff fails to state a claim upon which relief can be granted. A challenge under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the complaint. In deciding such a motion, the court is to assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

Plaintiff brings the section 1983 claim on behalf of its individual members, as parens patriae. Plaintiff asserts that the 1895 Act establishing the Ute Mountain Ute Reservation created property rights held by individual tribal members, and that as a privilege of each member's property rights on the reservation, the member receives a *per capita* distribution of the royalties paid under tribal oil and gas leases. (Pl.'s Response at 13–14.) Plaintiff asserts that the diminished royalty payments resulting from imposition of state taxes "deprive[] the Tribe's members of the full benefits of the 1895 Act" (*id.* at 14), and of property rights in violation of the Fifth Amendment. (Compl. ¶¶ 31–35.) Likewise, Plaintiff alleges that the taxes deprive tribal members of the privileges and immunities secured to them under the Fourteenth Amendment.

Defendant argues that the Tribe is not a "person" who can bring suit under section 1983 because the Tribe does not assert private rights within the ambit of that statute. Instead the Tribe seeks to enforce its right of self-governance. The Supreme Court recently held that a Tribe could not bring a section 1983 action because it was not a "person" under that statute when it sought to advance sovereign prerogatives rather than to "secure private rights against government encroachment." *Inyo County v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 712 (2003). *Inyo County* concerned a tribal casino that sought to prevent county officials from seizing the employment records of several tribal members who were being investigated for welfare fraud. *Id.* at 704. The Tribe did not contest the validity of the county's warrants, but rather argued that in executing the warrants, the county officers acted "beyond the scope of their jurisdiction and without authorization of law" because the Tribe is a sovereign not subject to state legal processes. *Id.* at 706. The Supreme Court held that because the tribal members' Fourth

6

Amendment rights had not been violated, the Tribe's only objection to the execution of the warrants was the infringement of its sovereignty. *Id.* at 711. The Court stated that section 1983 was enacted to protect individual rights against state encroachment, not to protect the rights of sovereigns. *Id.* at 711–12.

The Tenth Circuit has not yet applied *Inyo County* to determine which rights Tribes can enforce using section 1983. When a Tribe seeks to enforce rights created by a treaty or federal statute, the court must establish whether those rights are held by individual tribal members as opposed to the Tribe *qua* tribe. The most significant and pertinent application of *Inyo County* to date is *Skokomish Tribe v. United States et al.*, 410 F.3d 506 (9th Cir. 2005). In that case, the Ninth Circuit held that the treaty-based rights asserted by the Skokomish Tribe did "not give rise to individual actions cognizable under section 1983." *Id.* at 515. The Skokomish Tribe brought federal and state claims stemming from a hydroelectric project that flooded tribal lands, blocked fish migration, and caused the silting over of the Tribe's fisheries and shellfish beaches, among other damages. *Id.* at 509–10. The court held that the Tribe's treaty-based fishing rights were essentially communal, even though individual members benefitted from those rights, and therefore the Tribe could not assert these rights under section 1983. *Id.*

A close examination of the nature of the rights asserted by a Tribe is essential to determining whether a section 1983 claim is cognizable. In this case, the Ute Mountain Ute Tribe asserts that the Act of February 2, 1895 "explicitly set aside the New Mexico portion of the Ute Mountain Ute Reservation for 'the sole and exclusive use and occupancy' of those Ute Indians who did not select allotments of land under Section 2 of the Act." (Pl.'s Response at 13 (*citing* 53 Cong. ch. 113; 28 Stat. 677 (Feb. 20, 1895))). According to Plaintiff, the 1895 Act created federal property rights held by <u>individual</u> tribal members, unlike the Skokomish treaty, which protects only "tribal fishing rights." (*Id.* at 14.)

A comparison of the language of the two treaties does not support Plaintiff's distinction. The Treaty of Point No Point, at issue in *Skokomish Tribe*, secures fishing rights "to said Indians . . . in common with all citizens of the United States." Treaty of Point No Point, Jan. 26, 1855, 12 Stat. 933, art. 4. The Ninth Circuit concluded that this language created fishing rights to be held by the Tribe communally. 410 F.3d at 514. Plaintiff argues that Section 3 of the 1895 Act set aside the New Mexico land for "the sole and exclusive use and occupancy" of Ute Indians who

did not select allotments of land in Colorado. Plaintiff's implication is that the "sole and exclusive" use language confers individual property rights upon these tribal members, but the text of the 1895 Act supports the opposite conclusion. Section 2 of the 1895 Act requires the Secretary of the Interior to "cause allotment of land, *in severalty*, to be made to such of the Southern Ute Indians in *Colorado* as may and elect and be considered by him qualified." 28 Stat. 677, sec. 2 (emphases added). Black's Law Dictionary defines severalty as "the state or condition of being separate or distinct," and helpfully provides a pertinent example: "the individual landowners held the land in severalty, not as joint tenants." Black's Law Dictionary 1406 (8th ed. 2004).

Section 3 of the 1895 Act addresses those Indians who did not elect or were not qualified "to take allotments of land in severalty." For the "sole and exclusive use and occupancy" of these Indians, the 1895 Act reserves the territory in New Mexico. Notably, the "in severalty" language is absent from Section 3. This suggests that while the Section 2 allotments in Colorado were intended to be held by Indians individually, the reservation in New Mexico was to be held as communal tribal property.[1]

Plaintiff has not demonstrated that individual Ute Mountain Ute Indians have private property rights enforceable via section 1983. The Tribe owns the property and collects taxes and royalty payments from oil and gas operators in its sovereign capacity, rather than on behalf of individual tribal members with an ownership interest in the land. Individual tribal members receive a *per capita* distribution of royalty and tax revenue because of their status as members and as beneficiaries of tribal government revenues, not due to any individual property right. In conclusion, the 1895 Act conveyed the territory in New Mexico to the Ute Mountain Ute Tribe for communal ownership and use, and created no federal property rights in individual members that could now be asserted in a section 1983 action. *See Skokomish Tribe*, 410 F.3d 515.

----

[1]This reading of the statute is supported by a proviso at the end of Section 2 (Colorado) stating: "Indians taking allotments as herein provided shall retain their interest in all tribal property." This proviso demonstrates that while the allotments were granted to individual Indians in their personal capacity, those Indians did not therefore lose their rights in tribal, communal property. In contrast, the Ute Indians who did not take allotments under Section 2 have *only* tribal property interests.

8

Even if individual Ute Mountain Ute Indians did have property interests within the ambit of section 1983, the Tribe would still have to plead that Defendant's taxes, as applied to the private property, "depriv[ed] [those individuals] of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The *Inyo County* decision observed "that a sovereign tribe enjoys rights of the type that an individual tribe member or other private person would not. *Va. Office for Prot. & Advocacy v. Reinhard*, 405 F.3d 185 (4th Cir. 2005) (*citing Inyo County*, 538 U.S. at 712.) In *Inyo County*, the Tribe asserted the Fourth Amendment rights of its members, but because the county had properly obtained the search warrants, there was no violation of those rights. 538 U.S. at 711. The only ground to challenge the search was the Tribe's sovereign interest in being free from state process, and individual tribal members could not assert this interest. In short, a Tribe may not "sue under Section 1983 to vindicate its rights *as a sovereign*." *See id.* at 711–12; *Lippoldt v. Cole*, 468 F.3d 1204, 1215 (10th Cir. 2006). A private landowner would have no right to challenge the taxation of oil and gas producers operating on the landowner's property, simply because those taxes affected the revenues the landowner received from the operations. Tribes have a special status that allows them to enjoin state taxation in certain circumstances, but this right cannot be enforced through section 1983.

Plaintiff's complaint also asserts a violation of the Fourteenth Amendment's privileges and immunities clause. (Compl. ¶ 35.) However, this clause has been given a narrow construction, *see Jones v. Helms*, 452 U.S. 412 (1981), and Plaintiff does not state a claim falling within the limited set of rights that this clause has been held to protect. Thus, even if the 1895 Act could be interpreted to create individual property interests, the Tribe has not stated a claim that the Defendant's taxation interferes with a federal constitutional or statutory right held by individual tribal members.

The Court concludes that Defendant's motion to dismiss should be granted as to Plaintiff's claim under 42 U.S.C. § 1983. Consequently, Plaintiff's request for costs and attorney's fees under 42 U.S.C. § 1988 should also be denied.

**IV. Interference with Federal Regulations and Self Determination**

Defendant also argues for dismissal under Rule 12(b)(6) of Plaintiff's first claim for relief, which contends that Defendant's taxes interfere with tribal sovereignty and with federal statutes regulating oil and gas production on the reservation. Viewing the factual allegations in the light most favorable to Plaintiff, the Court concludes that Defendant's motion to dismiss should be denied as to Plaintiff's first claim.

While the Court concludes that Plaintiff's first claim, as alleged, is legally sufficient and should not be dismissed, the merit of Plaintiff's first claim depends greatly on the facts. In *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144–45 (1980), the Supreme Court held that when a state levies a tax on non-Indians engaging in activity on a reservation, the court is to make "a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." Such an inquiry is best conducted with the benefit of a more complete factual record than is available on a motion to dismiss.

        **IT IS THEREFORE ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. No. 7) is **GRANTED** as to Plaintiff's third claim for relief under 42 U.S.C. § 1983 and that claim is dismissed with prejudice; and

2. Defendant's Motion to Dismiss is otherwise **DENIED**.


_____

SENIOR UNITED STATES DISTRICT JUDGE